IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

SPECTRX, INC.,                          :
                                        :
            Plaintiff,                  :
                                        :
      v.                                :      CIVIL ACTION NO.
                                        :      1:05-CV-0778-JOF
ABBOTT LABORATORIES,                    :
                                        :
            Defendant.                  :

**OPINION AND ORDER**

This matter is before the court on Defendant's motion to stay [3], Plaintiff's motion

to remand [13], and Defendant's motion to file Instanter Surreply to Motion to remand. [22].

**I.  Background**

**A.  Procedural History**

Plaintiff, SpectRx, Inc., brought an action for misappropriation of trade secrets and

breach of contract against Defendant, Abbott Laboratories, Inc., in State Court of Cobb

County, Georgia, on February 17, 2005.    Defendant removed the case to this court on

March 22, 2005.    Defendant then filed a motion to stay the proceedings pending arbitration.

Plaintiff then filed a motion to remand the proceeding to state court.

**B. Facts**

Starting in 1995, Plaintiff and Defendant began sharing information relating to medical research.  In contemplation of this cooperative process, the parties entered into two contracts controlling the disclosure of confidential information.  The parties entered into a Confidential Disclosure Agreement ("CDA") on December 13, 1995 and entered into a Research and Development License Agreement ("RDL") on October 10, 1996.

Several portions of the RDL are relevant to the motions before the court.  First, in Article 12.2 of the RDL ( "the exclusive remedies clause"), the parties set forth the types of remedies that each party could seek.   "The remedies set forth in this Agreement shall constitute the sole and exclusive remedies of the parties hereunder and the parties shall not avail themselves of any other remedies, whether in equity or law, except that either party may seek injunctive relief and/or damages for violation of Article 13."   Also, Article 13 dealt with the treatment of confidential information disclosed pursuant to the RDL.   Specifically, in Article 13.4 of the RDL, titled "Other Agreements," the parties set out the scope of the RDL, specifically in reference to the CDA:

> [t]he parties have entered into a Confidential Disclosure Agreement dated December 13, 1995 ("CDA").   On and after the Effective Date of this Agreement, all subject matter conveyed or covered under this Agreement or the CDA shall be governed in all respects by the confidentiality provisions contained in this Article 13.

Finally, in Article 14.5 of the RDL, titled "Alternative Dispute Resolution," the parties set out the required procedure for settling disputes:

2

The parties agree that any dispute that arises in connection with this Agreement shall first be presented to the respective presidents of the ABBOTT Diagnostic Products Division, and of SPECTRx, or their designees, for resolution. If no resolution is reached, then such dispute shall be resolved by binding Alternative Dispute Resolution ("ADR") in the manner described in the Appendix 14.5.

The CDA contains no provisions addressing or requiring arbitration.

In April 2001, Defendant launched a product, Sof-Tact, that Plaintiff contends used information gained through the parties' relationship. In its complaint, Plaintiff alleges that Defendant breached both the CDA and the RDL by using Plaintiff's confidential information and failing to use due care to protect such confidential information. Plaintiff further alleges that Defendant misappropriated its trade secrets by improperly using information Defendant obtained pursuant to the two agreements.

### C. Contentions

Defendant contends that the court should stay this litigation in order for the parties to submit to binding arbitration as mandated by the RDL. Plaintiff responds that some of the alleged misappropriations happened prior to the creation of the RDL and thus are not covered by the arbitration provision. Further, Plaintiff contends that Article 12.2, which describes remedies available, excepts violations of Article 13 from the mandatory arbitration provision set forth by the RDL. Finally, Plaintiff avers that the mandatory arbitration provision should not apply because its procedures violate public policy.

## II.  Discussion

3

### A. Motion to Stay

Courts repeatedly have recognized a strong federal policy favoring arbitration as a means of avoiding litigation. *Paladino v. Avnet Computer Technologies, Inc.*, 134 F.3d 1054, 1057 (11th Cir. 1998). This policy is evident in the various provisions of the Federal Arbitration Act ("FAA"). *Id.* The FAA, however, does not require parties to arbitrate disputes unless they have agreed to do so. *Id.* Parties who have decided to arbitrate disputes may also choose to exclude "certain claims from the scope of their arbitration agreement." *Id.* However, because the FAA favors arbitration, parties must clearly express their intent to exclude categories of claims from their arbitration agreement." *Id.* The parties' intent is the key focus for courts in determining if certain issues were to be excluded from mandatory arbitration. *Id.*

In the RDL's "Alternative Dispute Resolution" clause, the parties agreed that "any disputes" would first be presented to the respective presidents of the parties, and if no resolution could be reached, the parties would submit to "binding Alternative Dispute Resolution."[1] The parties did not limit the type of claims to be settled by arbitration. The

---

[1]Plaintiff also contends that because the mandatory arbitration provision provides for very limited discovery, simply an exchange of a list of witnesses to be called, it is void because it violates public policy. Parties that are subject to arbitration many times agree to little or no discovery in order to minimize costs of litigation. *Caley v. Gulfstream Aerospace Corp.*, 2005 WL 2840372 (11th Cir. Oct. 31, 2005); *Paladino*, 134 F.3d at 1062 (Cox, J., concurring). Considering the federal policy favoring arbitration, and because there is no evidence of unequal bargaining power, and because both parties agreed to the provisions and procedure for the arbitration, the court finds no evidence that the arbitration procedure

4

parties have shown an intent to arbitrate "any disputes," whether contract or tort, that arise out of the RDL.  Thus, standing alone, two of the claims raised by the plaintiff, namely its breach of contract claim and its misappropriation claim at least to the extent it was based on violations of the RDL, would be subject to mandatory arbitration.

### 1.  Misappropriations made in violation of the RDL

Plaintiff contends that mandatory arbitration is a remedy set forth under the RDL and that the "Exclusive Remedies" clause found in Article 12.2 of the RDL specifically excepts violations of the confidentiality provisions in Article 13 from this remedy.  To support this contention, Plaintiff avers that the language of the exclusive remedies clause allows parties to seek remedies, namely damages and injunctive relief, for violations of the confidentiality provisions that would not otherwise be allowed under the contract.

Plaintiff points to the "Exclusive Remedies" clause to divine some sort of exception to mandatory arbitration.  The language contained in the clause states that parties are bound by the remedies set forth in the agreement as the only remedies the parties may seek.  The second part of the provision states that parties are not bound by the remedies set forth in the contract for violations of the confidentiality provisions found in Article13.  As to those violations the parties may seek either injunctive relief or damages.  Plaintiff contends that because the only remedy discussed in the contract is that of mandatory arbitration, this

in the instant action violates public policy.

AO 72A
(Rev.8/82)

language must mean that the parties had contracted for the right to seek relief for violations of the confidentiality provisions by way of either litigation or arbitration.

However, contrary to Plaintiff's argument, arbitration is not itself a legal remedy. Arbitration is a procedure through which parties agree to seek remedies for disputes. The cases that Plaintiff cites to support its contention that many courts have said that arbitration is a remedy do not find that arbitration is the remedy, but rather find that arbitration is the avenue through which the party must seek a remedy. Thus, arbitration cannot be the remedy that the parties were intending to except in creating the "Exclusive Remedies" clause. Rather, the clause specifies the remedies that the parties may seek for violations of the confidentiality provisions, "injunctive relief and/or damages." The parties did not state where such relief could be sought. Thus, while the exclusive remedies clause excepts violations of the confidentiality provisions from the exclusive remedies found in other provisions of the contract, the clause does not except redress for such violations from being submitted to the mandatory arbitration process discussed above.

### 2. Misappropriations made prior to RDL

Plaintiff contends that Defendant misappropriated trade secrets prior to the signing of the RDL. Plaintiff admits that misappropriations in violation of the CDA that were made after the signing of the RDL are governed by the confidentiality agreement found in Article 13 of the RDL, pursuant to the "Other Agreements" clause of the RDL. Nevertheless, Plaintiff contends that the language of that clause deals only with breaches of the CDA made after the

6

signing of the RDL. The "Other Agreements" clause is not a complete integration of the CDA into the RDL. Rather, the parties agreed that on and after the date of the signing, all subject matter conveyed pursuant to the RDL or the CDA be governed by the confidentiality provisions of Article 13 of the RDL. The confidentiality provisions of Article 13 address how the parties were to handle the confidential information, not how breaches of Article 13 should be handled. In the "Other Agreements" clause, the parties only agreed on how information conveyed pursuant to the CDA should be treated, not how disputes should be resolved; any disputes based on breaches of the CDA should be governed by the language of the CDA. Because the CDA contains no provisions addressing or requiring arbitration, the court holds that Plaintiff's claim for misappropriation of information conveyed pursuant to the CDA is not subject to mandatary arbitration.

Nevertheless, such a finding does not prevent the court from staying the litigation so that issues subject to mandatory arbitration may be dealt with in such manner. The FAA states:

> [i]f any suit or proceeding be brought in any of the courts of the United States upon any issue referable to arbitration under an agreement in writing for such arbitration, the court in which such suit is pending, upon being satisfied that the issue involved in such suit or proceeding is referable to arbitration under such an agreement, shall on application of one of the parties stay the trial of the action until such arbitration has been had in accordance with the terms of the agreement, providing the applicant for the stay is not in default in proceeding with such arbitration.

9 U.S.C. § 3.

AO 72A
(Rev.8/82)

Based on the language of the statute, the court must stay any issues which are properly referable to arbitration. The decision to stay the entire proceeding where the parties advance both arbitrable and non-arbitrable issues is within the discretion of the district court. *Klay v. All Defendants*, 389 F.3d 1191, 1204 (11th Cir 2004). If arbitrable issues predominate, the court should stay the entire proceeding pending the outcome of the arbitration. *Id.*

Here, the nature of the claims and the relationship of the parties suggest that a stay in the litigation is appropriate. The court already has concluded that the claim for breach of the RDL and misappropriations are subject to mandatory arbitration. The nature of the misappropriations claim does not separate when the improper usage of Plaintiff's confidential information took place. Plaintiff has not given any information which makes it likely that the misappropriations took place prior to the parties enacting the RDL. Thus, it would be inappropriate to separate the claims by the timing of the misappropriations. Finally, most of the relationship between the parties which Plaintiff claims led to the misappropriations took place under the RDL.[2]

Thus, the court finds that issues properly referable to arbitration predominate and GRANTS Defendant's motion to stay [3].[3]

---

[2]The period between the signing of the RDL on October 10, 1996 and the alleged product of the misappropriation of trade secrets, the launch of the Sof-Tact in 2001, is much longer than the ten months between the signing of the CDA and the RDL.

[3]Because the court has stayed the litigation pending arbitration, the court DENIES with leave to renew Plaintiff's motion to remand [13] and Defendant's motion to file Instanter

### III. Conclusion

The court GRANTS Defendant's motion to stay [3] in part, and DENIES with leave to renew Plaintiff's motion to remand [13], and Defendant's motion to file Instanter Surreply to Motion to remand [22] pending arbitration.

The Clerk of the Court is instructed to administratively close the case pending conclusion of arbitration.

---

Surreply to Motion to remand [22].

9

**IT IS SO ORDERED** this 21st day of March 2006.

s/ J. Owen Forrester
J. OWEN FORRESTER
SENIOR UNITED STATES DISTRICT JUDGE

AO 72A
(Rev.8/82)